JOSEPH B. HIGNETT vs. INHABITANTS OF NORRIDGEWOCK.

Somerset.   Opinion February 26, 1909.

*Ways.  Defects.  Notice.  Issue of Fact.  Damages.*

The plaintiff brought an action against the defendant town to recover damages for personal injuries sustained by him while riding horseback along a town way in the defendant town, by reason of his horse stepping into a hole in the traveled part of the way, and recovered a verdict for $441.67.  The defendant town contended (1) that the plaintiff's proof located the alleged defect at another and different place in the way than that described as its location in his written notice to the defendant town after the accident; (2) that there was not sufficient proof of the twenty-four hours' actual notice of the defect prior to the accident, as required by statute; (3) that the plaintiff was not in the exercise of due care at the time of the accident; (4) that the damages awarded were excessive.

*Held:* (1) That it was an issue of fact for the jury whether the plaintiff's injuries were caused by the defect described in the notice and the jury having found for the plaintiff on that issue, no sufficient reason is shown for disturbing that finding.

(2)  That the verdict shows that the jury must have found that the defect existed and that the person acting as substitute for the road commissioner had the necessary twenty-four hours' actual notice of the defect, and that such finding was justified by the evidence.

(3)  That the jury were authorized by the evidence to find that the plaintiff was in the exercise of due care at the time of the accident.

(4)  That the damages awarded were not excessive.

On motion by defendants.   Overruled.

Special action on the case to recover damages for personal injuries alleged to have been sustained by the plaintiff while riding horseback along a town way in the defendant town, by reason of his horse stepping into a hole in the traveled part of the way.   Plea, the general issue.   Verdict for plaintiff for $441.67.   The defendants then filed a general motion to have the verdict set aside.

The case is stated in the opinion.

The declaration in the plaintiff's writ is as follows:

"In a plea of the case for that heretofore, to wit, on Monday, the fourth day of June, A. D. 1906, there was a certain public highway, legally established, in said town of Norridgewock, said

highway is known as the River road and leads from Norridgewock to Madison, on the south side of the Kennebec river, which said highway the said defendants were then and there bound by law to keep in repair so as to be safe and convenient for travelers with horses, teams and carriages; and the plaintiff avers that on the said fourth day of June, A. D. 1906, he was lawfully traveling over and along said highway, riding upon a safe and kind horse, near the culvert at the foot of Yeo Hill, so-called. And the plaintiff says that said defendants did not keep said highway in repair so that it was safe and convenient for travelers with horses, teams and carriages, but on the contrary, said highway was unsafe, inconvenient and defective; that there was a hole about a foot square and one and one-half feet deep in the traveled part of the road, occasioned by the dirt part of the road sinking into the drain of said culvert, at or near the foot of said Yeo Hill; that said culvert was defectively built and maintained, so that the road caved into the drain of the culvert, on the south side of the culvert, making a dangerous and unsafe place in the road and that said highway, at that point, had been dangerous, unsafe and defective, for a long time prior to the said fourth day of June, A. D. 1906, to wit, for more than twenty-four hours. And the plaintiff says that while riding along said highway, upon said safe and kind horse, and while in the exercise of due care and caution, and when near said culvert at the foot of said Yeo Hill, the horse stepped into said hole in the traveled part of said highway on the south side of said culvert, and violently threw the plaintiff upon the ground, striking upon his shoulder and right side, all of which was due solely to the carelessness, negligence and fault on the part of the said defendants, and with no fault, negligence or want of due care on the part of the plaintiff, and the plaintiff says that he was severely injured thereby, and received a sprained shoulder, that the edges of the bone of the right shoulder were broken, his hips and back were wrenched and strained, and he was injured internally, so that he has spit blood since the accident, and received other injuries, the full extent and nature of which cannot be ascertained at the present time, or specified more clearly; that he received a severe shock to

his system, and was greatly lamed and hurt, and has suffered great
bodily pain and mental anxiety and distress for a long period of
time, and has been compelled to pay out large sums of money for
medical attendance, care and nursing, and that he is now incapaci-
tated for performing his usual duties and labor.    And the plaintiff
further avers that within fourteen days after receiving said injury,
to wit, on the seventeenth day of June, A. D. 1906, he notified
the municipal officers of said town of Norridgewock, in writing,
setting forth his claim for damages, specifying the nature of his
injuries, and the nature and location of the defect which caused
said injury; and the plaintiff further avers that the municipal
officers and road commissioner of said town of Norridgewock, had
twenty-four hours' actual notice of the defective condition of said
highway, at said culvert, as heretofore specified, whereby and by
force of the statute in such case made and provided, an action hath
accrued to the plaintiff to have and recover of said defendants, for
the damage and injury so to him sustained as aforesaid, to the
damage of said plaintiff, (as he says) the sum of two thousand
dollars."

*Forest Goodwin*, for plaintiff.

*LeRoy R. Folsom, and Augustine Simmons*, for defendants.

Sitting:   Emery, C. J., Whitehouse, Cornish, King, Bird, JJ.

King, J.   Action to recover damages for personal injuries alleged
to have been sustained by the plaintiff while riding horseback along
a town way in the defendant town, by reason of his horse stepping
into a hole in the traveled part of the way.    The case is before this
court on defendants' motion to set aside a verdict for the plaintiff.

1.    The first, and perhaps chief, contention in support of the
motion is that the plaintiff's proof located the alleged defect at
another and different place in the way than that described as its
location in the required written notice to the town after the accident.

The language of the written notice, as to the location of the
defect, is:   "The particular place on said road where I was injured
was at or near the foot of the Yeo Hill, so-called, at a culvert that

runs across the water course at that point.    There was a hole about a foot square and one and one-half feet deep in the traveled part of the road caused by the dirt part of the road sinking into the drain of said culvert.    The culvert was defectively built and maintained, so that the road caved into the drain of the culvert on the south side, making a dangerous and unsafe place in the road."

The record discloses the following facts and conditions:

The accident occurred at a culvert crossing the road between two hills—that on the north called Yeo Hill, and that on the south Hignett's Hill.    These hills are neither very steep nor long.    From the place of the accident to the top of Hignett's Hill is stated to be 753 feet, and to the top of Yeo Hill about 300 feet.    There are two other culverts crossing the road at or near the bottom of these hills—one 213 feet north, and the other 203 feet south of the middle culvert.

It seems a fair conclusion, from all the evidence, that the middle culvert was at the lowest point between the hills, and that there was a slight decline from the northerly to the middle culvert.

The defendants contended that the location of the defect described in the written notice was thereby necessarily limited to the northerly culvert, because that was the culvert "at or near the foot of the Yeo Hill."    The plaintiff's evidence established the fact that his injuries were occasioned by a hole, such as described in his notice, located at the middle culvert.    No claim was made that there was a similar hole at the northerly culvert.

It was, therefore, an issue of fact for the jury whether the plaintiff's injuries were caused by *the* defect—the same defect, described in the notice, or, in other words, if the culvert described in the notice was the middle culvert.    This issue was sharply tried out, and the jury decided it in the plaintiff's favor.    A careful examination of the record fails to satisfy us that that finding was not justified by the evidence.

The jury may have found, and we could not say that such a finding would be manifestly wrong, that the location of the defect proved answered accurately the general descriptive words of the notice:    "The particular place    .    .    .    where I was injured was

at or near the foot of the Yeo Hill." But this general description of the location is limited by the more specific words: "at a culvert that runs across the water course at that point."

Was the middle culvert the one "across the water course?" If it was, that fact necessarily determined in the plaintiff's favor the issue whether the defect at the middle culvert, which caused the injury, was the same defect described in the notice. Upon this question the evidence was somewhat conflicting. The defendants claimed that the northerly culvert ran across a water course also. But it fairly appears, we think, that the water course at the middle culvert was the larger, and at the lowest point between the hills; that it was the outlet of a well defined stream, draining a large area, and that water flowed in it during the whole, or practically the whole year. True, there was also a water course under the northerly culvert, through which water flowed in times of freshets and heavy rains, but, while it was claimed that this water course drained a small ravine or springy spot outside the highway, it was not shown that any well defined stream of water passed through it, and it was admittedly dry during a considerable portion of the year.

It is of significance, we think, on this point, that two of the defendants' witnesses, Mr. Savage, the selectman, and Mr. Tuttle, the substitute for the commissioner, spoke of the middle culvert as the "bridge."

We think the evidence preponderated in support of the conclusion that the water course over which the middle culvert crossed was "the water course"—the only natural and well defined water course, between those hills. But this was a question of fact for the jury to pass upon. They have passed upon it, after seeing and hearing the witnesses, and must have found, under appropriate instructions, that the middle culvert was the one mentioned in the written notice "that runs across the water course at that point." We find no reason to disturb that finding.

2. The defendants further urge that there was not sufficient proof of the twenty-four hours' actual notice of the defect prior to the accident, as required by statute. The plaintiff claimed that Mr. Tuttle, who was at the time acting as a substitute for the road

commissioner, had such notice. Mr. Tuttle denied it. It was claimed by the defendants that the plaintiff's horse broke through the road and the hole was thereby made. The plaintiff testified that he did not see the hole when his horse fell, as he was then looking at some men plowing nearby, but saw it after he got up. There was, however, sufficient evidence to justify the jury in finding that there was a hole, prior to the accident, at the place in question. Several witnesses so testified. Mr. Gillin stated that prior to the accident his horses broke two holes at this middle culvert, one on each side of the road; that he personally notified Tuttle of the holes several times; that they were not fixed; and that on the 31st day of May, four days before the accident, he saw the same hole on the east side of the road at the place of the accident. Mr. Creighton testified that he notified Tuttle, prior to the accident, of a hole at this culvert on the east side of the road. Mr. Williams testified that he passed over the culvert on the 31st of May and saw a hole at the point of the accident. He said: "I had to get off the democrat and walk the horse one side to get by the hole." This witness stated that he was in the field nearby looking at the plaintiff when his horse fell, and that he saw the horse step his off forward foot into this hole. He went to the plaintiff's assistance and found the hole, into which the horse stepped, was at the same place as the one he saw and avoided a few days before. The jury heard and considered all the evidence upon this disputed point.

No question is raised that they were not fully and explicitly instructed as to the requirements of the statute relating to the proof of actual notice of the particular defect. Their verdict shows that they must have decided that the defect existed, and that Tuttle had the necessary twenty-four hours' actual notice of it. We think their decision was justified by the evidence.

3. The jury were authorized by the evidence to find that the plaintiff was in the exercise of due care at the time of the accident. He said he had no knowledge of the defect or of any other hole in the road. He had a right to assume, with no knowledge to the contrary, that the traveled part of this town way in the month of June would be safe for driving thereon on horseback. He, and all

the witnesses who saw him at the time his horse fell, testified that he was not driving immoderately.

4. Excessive damages. The verdict was $441.67. It will serve no useful purpose to incorporate here any extended statement of the evidence introduced to establish the plaintiff's damages. The defendants contended that his injuries were very slight, and the resulting disabilities limited. But, on the other hand, it appeared that the plaintiff received a very violent fall, being thrown over his horse's head on to the road, and the horse fell upon him, where he lay, dazed or partly unconscious, till assisted up by Mr. Yeo and Mr. Williams. In his notice to the town within fourteen days after the accident he stated: "I received a sprained shoulder, the edges of the bone of the shoulder being broken, my hips and back were wrenched and strained, and I was injured internally and have been spitting blood since the accident."

Dr. Smith, a witness for the defense, was called to the plaintiff the day of the accident and could find "no dislocation or fracture" of the shoulder. He was notified again that night, "that there was certainly something broken in his shoulder and he wanted me to come back again. I went back and went through as careful an examination as I could give him and decided I couldn't find any fracture or dislocation, and told him so." On the 7th of June, Dr. Dascombe was called in consultation and no fracture or dislocation of the shoulder was found.

On July 24th, Dr. Bean, who was at the plaintiff's house, made a slight examination of the shoulder finding it "considerably swollen." "He said that there was great pain when I moved the arm." The plaintiff testified that he was in bed "about ten days;" and that he carried his arm in a sling "somewhere about five or six months;" that he spit blood "quite a little" after the accident, and that at the time of the trial, a year and a half after the accident, his shoulder still troubled him. Dr. Dascombe stated that in an examination of the plaintiff the night before the trial "I found restricted movement of the right arm, right shoulder joint, and at the acromial end of the clavicle a slight enlargement, more so than on the other side." The Doctor further said: "Of course, it won't get well in one week,

or may not in one year. He may never be able to extend the arm above the head as he can the other. The left arm he could raise up so that it came in close proximity to his head, the other one no nearer than six or eight inches, at the office last night."

From an examination of all the evidence bearing upon the nature of the plaintiff's injuries, and the extent of his resulting disabilities, it is the opinion of the court that the amount of damages awarded by the jury is not excessive. The entry will be,

*Motion overruled.*

*Judgment on the verdict.*